**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

SWEDISH INSTITUTE INCORPORATED,
Plaintiff,

v.

LINCOLN EDUCATIONAL SERVICES CORPORATION and DERRICK RUFFIN,

Defendants.

CASE NO. 1:26-cv-05955

# ~~[PROPOSED]~~ ORDER TO PERFORM FORENSIC INSPECTION AND PROTOCOL AGREEMENT

Pursuant to the Consent Order and Stipulated Injunction between Plaintiff Swedish Institute Inc. ("Plaintiff" or "Swedish") and Defendant Lincoln Educational Services Corp. ("Lincoln") (ECF No. 42), Swedish and Lincoln (collectively the "Parties") agree to the following Forensic Protocol:

## 1. Scope of Forensic Review

a. This Protocol sets forth the agreement among the Parties for the search and inspection of the computers, smart phones, media, electronic storage devices, online document storage repositories, online email accounts or any other physical or virtual location described herein that the Parties agree are reasonable locations to search for Plaintiff's allegedly confidential property, including Plaintiff's alleged proprietary/confidential information, or evidence, including relevant metadata and forensic artifacts, of the use, disclosure, transfer, access or destruction of Plaintiff's alleged proprietary/confidential information ("Plaintiff's Alleged Confidential Information").

b. The parties have agreed to jointly engage Maragell (https://maragell.com/), a third-party forensic examiner, as a neutral forensic examiner ("Forensic Examiner") to carry out the procedures contained within this Protocol. The Forensic Examiner is engaged specifically for execution of the directives contained within this Protocol.

c. The Parties shall evenly split the costs and fees charged by the Forensic Examiner.[1]

[1] This does not preclude any party from seeking to recover costs and fees following a final ruling on the merits, whether pursuant to the Defend Trade Secret Act or any other applicable statute, rule, or agreement.

d. The devices or accounts in Lincoln's possession, custody, or control that are the subject of this Protocol (the "Lincoln Devices") are the following:
   (1) Dell Pro 16 laptop (SN 96S39F4) issued by Lincoln to Derrick Ruffin
   (2) Microsoft Exchange online cloud email account assigned by Lincoln to Derrick Ruffin
   (3) Microsoft OneDrive for business cloud storage account assigned by Lincoln to Derrick Ruffin

e. In the event that any Party or the Forensic Examiner identifies additional devices or accounts that are reasonably likely to contain Plaintiff's Alleged Confidential Information, or good cause to examine backups of the Lincoln Devices as may have been created in the ordinary course of Lincoln's operations, the Parties shall meet and confer about supplementing this Forensic Protocol to add such devices or accounts to the list of "Devices" as defined herein and subject to this Protocol. The Parties acknowledge that the addition of new devices or accounts may also necessitate further negotiation of search parameters pursuant to Section 7 of this Protocol.

**2. <u>Certification of Devices</u>**

a. Lincoln shall make available to the Forensic Examiner for forensic inspection the Lincoln Devices within three (3) business days of execution of this Protocol, or as otherwise agreed by the Parties. In connection with the same, Lincoln shall provide a certification under penalty of perjury to Plaintiff and the Forensic Examiner within five (5) days of execution of this Protocol that, to the best of its current knowledge and belief: (1) the Devices identified in Section 1(d) are the only devices or accounts within Lincoln's possession, custody, or control that are reasonably likely to contain any of Plaintiff's Alleged Confidential Information; (2) Lincoln is not aware of any paper copies of Plaintiff's Alleged Confidential Information in its possession; and (3) identifying individuals other than Plaintiff (if any) with whom Lincoln has shared or to whom it has disclosed or emailed any of the Plaintiff's Alleged Confidential Information. To the extent that, following submission of its certification, Lincoln becomes aware of any additional devices or accounts that are reasonably likely to contain Plaintiff's Alleged Confidential Information, Lincoln shall promptly supplement its certification within three (3) business days of becoming aware of this information, in addition to meeting and conferring as provided in Section 1(e).

**3. <u>Access to Devices</u>**

In providing access to the Forensic Examiner to the Lincoln Devices identified above, Lincoln shall provide the Forensic Examiner access passwords and/or other information needed to allow

access and shall cooperate with the Forensic Examiner in instances where two-factor authorization is required to permit access.

**4. <u>Preparation for Inspection</u>**

Prior to imaging any Devices, Forensic Examiner will follow industry standards to properly intake evidence to include, as applicable, recording the evidence make, model, serial number, volume serial numbers, and shall be allowed to take appropriate digital photographs to document their current physical condition and operability. If any Devices are received in an already-imaged format, Forensic Examiner shall deploy a write-protection device prior to inspecting the contents of the container or device to ensure the device or container is not modified. The Forensic Examiner will confirm the MD5 hash value prior to using any previously imaged devices. Prior to imaging devices not already imaged, Forensic Examiner shall properly prepare suitable forensic storage media ("Target Media") for receipt of any forensic images created through Forensic Examiner's execution of any directives under this protocol. The forensic examiner shall provide the parties with a chain of custody form listing the evidence received, as described within this Section 4.

**5. <u>Imaging of Devices</u>**

a. Forensic Examiner shall make one full forensic bit stream copy of each Device onto Target Media. The original source Devices shall, at all times, be preserved in an unaltered state. Forensic Examiner shall document and record on an acquisition form: (i) a general description of the process and tools utilized to conduct the imaging; (ii) the MD5 hash value of the original source Device; and (iii) the MD5 hash value of the copy.

b. If any Devices are computers, Forensic Examiner shall also obtain complementary metal oxide semiconductor (CMOS) date and time data within the computer basic input/output system (BIOS). The BIOS date and time should be compared with the actual date and time, and the two shall be recorded.

c. If any Devices are virtual repositories, Forensic Examiner shall create logical evidence files of the same and include within the logical evidence file properties, any and all information necessary to identify the original source of the virtual repositories.

d. Forensic Examiner shall be entitled to make additional copies of any forensic image created under this Protocol for purposes of redundancy and disaster recovery.

**6. <u>Preparation for Review and Search of Images</u>**

Prior to the Forensic Examiner conducting any forensic analysis or examination of any forensic image created from a Device, the Forensic Examiner shall ensure that all partitions are displayed/recovered and shall then execute general preparatory actions, including but not limited to the recovery of deleted folders and files (including from volume shadow copies), OCRing images as applicable, indexing the data, and other actions the Forensic Examiner deems appropriate to assist in the execution of this protocol.

**7. <u>Search Parameters and Reporting Requirements</u>**

a. For the period beginning January 1, 2026 to the present, the Forensic Examiner shall conduct a search across all files on the Devices according to the search parameters provided in Appendix A, which may include search terms, MD5 hash values, and/or file names, and which shall also include date parameters for the search (collectively, "Plaintiff's Data Search Parameters"). Plaintiff shall determine the Plaintiff's Data Search Parameters in its sole discretion provided that no term is arbitrary or capricious. The Parties recognize that initial parameters are selected without full visibility into Lincoln's systems. Lincoln shall not object to reasonable refinements to Plaintiff's Data Search Parameters upon reviewing the hit report. For avoidance of doubt, all searches shall be run against not only all data content, but also against all available metadata fields. Beyond the refinements above, additional or revised search terms, iterations of search terms, or revised date parameters may be agreed upon by the Parties and communicated jointly to the Forensic Examiner.

b. After searching using Plaintiff's Data Search Parameters, the Forensic Examiner shall provide the Parties with a report ("Hit Report") that provides the number of files that were responsive either in data content, or within a metadata field, to each of the searches provided by Plaintiff's Data Search Parameters, and with respect to each Device. Following receipt of the Hit Report, the Parties may negotiate to narrow Plaintiff's Data Search Parameters if they have produced an unreasonably large number of hits with respect to the Lincoln Devices (by narrowing them, for example, through the use of proximity connectors, exclusion of overbroad search terms, addition of other keywords, and/or use of exclusionary terms). If the Parties agree to such narrower parameters, they shall communicate those revisions jointly to the Forensic Examiner, which shall proceed with running the revised parameters. The Parties agree to negotiate promptly and in good faith concerning any revisions to Plaintiff's Data Search Parameters. Should the Parties be unable to resolve any disputes regarding Plaintiff's Data Search Parameters, the Parties may raise this issue with the Court as provided in the Consent Orders issued in this action.

c. Following identification of hits responsive to searches executed by the Forensic Examiner using Plaintiff's Data Search Parameters (as may have been revised pursuant to this Protocol), the Forensic Examiner shall provide a log ("Hit Log") that identifies any files responsive either in data content, or within a metadata field, to each of the searches provided by Plaintiff's Data Search Parameters (as may have been revised pursuant to this Protocol), and with respect to each Device. Such log will be provided to the Parties and shall be marked as CONFIDENTIAL pursuant to the Protective Order entered into between the Parties. Such log shall contain, at minimum, the following information about each file: File Name, Document Author, Document Last Saved Author, File Extension, File Signature, File Size, File System Created / Last Written / Last Accessed / Entry Modified Date, Document Last Printed Date, Document Last Modified / Last Saved / Last Written Date, MD5 hash, Full Path values, Password Protection Status (yes or no), and File Description (archive, file, deleted, overwritten, etc.).

d. In addition to conducting the searches and providing the Hit Report and Hit Log described above, the Forensic Examiner shall perform additional reviews as described herein, which may necessitate the creation of additional forensic reports as also described herein.

e. To the extent applicable, the Forensic Examiner shall provide a report setting forth any and all removable storage Devices examined subject to this Forensic Protocol, including:
   (1) A listing of the make/model/serial number of each and every Device which the Forensic Examiner examined/analyzed, and its storage media within;
   (2) Date and time the Device was formatted;
   (3) Hardware serial number;
   (4) Volume serial number;
   (5) Make/model/capacity of Device;
   (6) Identifying information such as the presence of Mac trashes folder or Windows Recycle Bin;

f. To the extent applicable, the Forensic Examiner shall provide a report setting forth any and all Desktop/Laptop/Server/NAS/SAN/USB, or any other storage locations and accounts examined subject to this Forensic Protocol, including:
   (1) a sequential reference/record number so that parties can refer to a given line item when communicating;
   (2) A USB device history report, to include entries from Setupapi logs, registry entries for USBStor and DevClass, logs, Unified Logs, FS Events, Favorite Volumes, Com.apple.finder.plist files, or any other applicable location, for all devices inserted;
   (3) Internet history report for files being downloaded/uploaded via cloud storage locations including but not limited to Box, Dropbox, YouSendIt, SugarSync, Google Drive, OneDrive, iCloud, etc.;
   (4) A listing of all files containing Plaintiff's Alleged Confidential Information transmitted and/or printed from the Devices, including, where available, File Name, Author, File Extension, File Creation / Last Modified / Last Accessed, MD5 hash and Full Path values.

g. To the extent not already reflected in the Hit Log, the Forensic Examiner shall provide a report which fully lists all emails sent or received that are returned as hits in the Hit Log. This report shall list, for each email, the date, time, From, To, CC, BCC, Subject, and Filename(s) of all attachments (to the extent not already included in the Hit Log).

h. The Forensic Examiner is authorized to analyze any files that may have been or were deleted to identify, to the extent possible, the date and time such files were deleted, the contents of the deleted files, and metadata identifying the date the files were created, last accessed, last modified, and any other attributes available regarding the files. If any such deletion activity is found to have occurred, the Forensic Examiner shall provide a report summarizing this activity.

i. The Forensic Examiner shall conduct reasonable searches for and evaluate if any anti-forensics evidence elimination techniques were employed such as: (1) evidence of searches for deleting files or removing content, (2) evidence of search for or purchases of software to delete files or remove content, (3) evidence of running software designed to delete files or remove content, (4) evidence of clearing of browsing history, (5) evidence of running shell commands or scripts in Terminal or equivalent application, which would include the listing of these commands, (6) evidence of items in Trash /Recycle Bin or clearing of Trash/Recycle Bin, (7) evidence of changing retention settings on mobile devices, and (8) any other analysis the Forensic Examiner deems necessary or appropriate through its expertise; after reviewing this information, the Forensic Examiner will report to the Parties, in writing, whether any anti-forensics evidence elimination techniques were employed, and if so, the details thereof. The report shall also include, to the extent detected from the evaluation above, information related to the download, purchase, installation, execution, usage, or removal of any data wiping, obfuscation, anti-forensics or time stomping, including specific information on the source, usage, and extent of any files permanently unavailable/irrecoverable following the use of any wiping or remediation software.

j. The Forensic Examiner shall conduct additional analysis for information relevant to the identification, use, disclosure, transfer, access, deletion, or destruction of potentially relevant data as may be directed by the Parties or the Court.

k. The Forensic Examiner shall provide copies of the reports described in this section to the Parties. The reports shall be marked as CONFIDENTIAL pursuant to the Protective Order entered into between the Parties.

**8. <u>Access to Files</u>**

a. Simultaneously with providing the Hit Log and reports described herein to the Parties, the Forensic Examiner will provide Lincoln with access to the data from the Lincoln Devices that was responsive to Plaintiff's Data Search Parameters (as may have been revised pursuant to this Protocol).

b. The Forensic Examiner may provide Plaintiff with access to the data from the Lincoln Devices that was responsive to Plaintiff's Data Search Parameters (as may have been revised pursuant to this Protocol), only after Lincoln's opportunity to review that data and the resolution of any objections raised by Lincoln as discussed further in this Section 8.

c. Lincoln shall have ten (10) business days after receipt of the data and reports from the Forensic Examiner to review that data and those reports and to specifically identify any

(1) privileged information, (2) "Personal Data,"[2] or (3) "Lincoln Unrelated Data"[3] (collectively "Privileged or Protected Data") that may be appropriately excluded from production, and to designate documents, information, Hit Log results, or reports as CONFIDENTIAL pursuant to the Protective Order entered into between the Parties (or to seek additional limits on disclosure pursuant to that Protective Order). Lincoln shall not designate as Privileged or Protected Data any of Plaintiff's Alleged Confidential Information or any evidence, including relevant metadata, of use, disclosure, access or destruction of Plaintiff's files or information. If the number of documents or Hit Log results is voluminous, Lincoln may request a reasonable extension of time from Plaintiff to complete its review pursuant to this Section 8(c), which request shall not be unreasonably refused.

d. No more than ten (10) business days after Lincoln's receipt of the data and reports from the Forensic Examiner, Plaintiff will have immediate access only to that data that Lincoln has not identified as Privileged or Protected Data, pursuant to Section 8.[4] Once Lincoln's deadline to object pursuant to Section 8 has expired, the Forensic Examiner shall provide Plaintiff with access to all data responsive to Plaintiff's Data Search Parameters (as may have been revised pursuant to this Protocol) that Lincoln has not identified as Privileged or Protected Data. Nothing in this Protocol shall be deemed to limit the proper scope of discovery or prevent a party from seeking relevant documents through proper discovery requests.

e. Lincoln and Plaintiff shall meet and confer regarding the disposition of any files where there is a dispute concerning the proper owner or relevance, or the removal from production, as well as the disposition of Plaintiff's files or other documents belonging to Plaintiff in Lincoln's possession, within three (3) business days after either party raises a dispute with the other party, unless Lincoln and Plaintiff mutually agree otherwise. To the extent Lincoln and Plaintiff are unable to resolve any dispute over Lincoln's objections or the ownership of any files or relevance, Lincoln and Plaintiff agree that the dispute may be resolved by the Court but the confidentiality of said files shall be maintained during the period of such dispute and subject to either Lincoln's or Plaintiff's right to seek additional protections for the files.

---

[2] Personal Data shall mean highly sensitive and private personal information with no actual or conceivable connection to the allegations and issues in this dispute, such as information about medical issues or about Mr. Ruffin's children or family. Data about Mr. Ruffin's employment or recruiting do not constitute Personal data generally, but those documents may be redacted to remove specific Personal data within them.

[3] Lincoln Unrelated Data shall mean hits that occur because they hit on a search term but had no actual or conceivable connection to the allegations and issues in this dispute, such as a recipe for "Swedish" meatballs or a letter to the "Swedish" embassy.

[4] To the extent Lincoln objects to the production of data, Lincoln shall provide a log of such files that it asserts should be excluded from the production to Plaintiff and must include, to the extent available, the file name, verbatim subject line, sender, recipient, and the specific basis for excluding the file from the production to Plaintiff.

f. Disputes between Lincoln and Plaintiff concerning any Device, account, search term, report, or hit document shall not delay or otherwise affect the Forensic Examiner's obligation to produce, or Plaintiff's right to receive, any data, reports, or Hit Log results that are not the subject of a dispute. In the event a dispute arises between Lincoln and Plaintiff with respect to a specific Device, account, search term, or document, the Forensic Examiner shall proceed with all aspects of the examination and production not affected by the dispute, and shall make available to Plaintiff all undisputed results on the schedule set forth in this Protocol. Disputed items shall be segregated by the Forensic Examiner and withheld from production only to the extent necessary to isolate the specific documents subject to the dispute. Lincoln and Plaintiff shall cooperate in good faith to enable the Forensic Examiner to make this determination promptly.

## 9. Remediation

The Parties shall meet and confer concerning the extraction and removal of Plaintiff's Alleged Confidential Information from the Devices after the reports are received and any disputes are promptly resolved. The Parties will identify the data to be deleted and the Forensic Examiner will permanently delete from the Devices all of Plaintiff's Alleged Confidential Information that is found on the Devices, including its alleged Confidential Information, subject to the Parties' mutual agreement regarding the scope of information to be removed and the timing of the removal. The Forensic Examiner shall retain a forensic image of all the Devices for preservation purposes for the duration of this litigation. Logistics for how to remediate the Devices shall be agreed upon by the Parties once the review has been completed.

## 10. Return of Original Devices

Following any remediation of any physical Devices (or, if no remediation is required, by joint instruction of the Parties), the Forensic Examiner shall return those physical Devices to Lincoln.

## 11. Right to Supplement

Based on the results of this executed Protocol, and any new additional information obtained during the execution of this Protocol, the Parties reserve the right to jointly request additional analyses on the Devices, and the Parties shall meet and confer regarding any such requests.

**12. Protocol Period**

This Protocol shall be effective beginning on the date it is ordered by the Court and will continue until the remediation in Section 9 is completed.

**13. Mr. Ruffin's Forensic Examination**

Plaintiff is negotiating a separate forensics examination with Defendant Ruffin that Maragell will complete. Within three business days of Plaintiff receiving any reports, logs, and/or data from Mr. Ruffin's forensic examination, Plaintiff shall produce a copy of any such reports, logs, and/or data to Lincoln's counsel, which Plaintiff may appropriately designate under the Protective Order entered in this case.

STIPULATED AND AGREED TO BY:

*/s/ Fredric J. Bold Jr.*

GREENBERG TRAURIG, LLP
Jason D. Burns
One Vanderbilt Ave.
New York, NY 10017
T: (212) 801-9200
jason.burns@gtlaw.com

Fredric J. Bold Jr. (*pro hac vice forthcoming*)
Justin K. Victor (*pro hac vice forthcoming*)
Andrew Z. Smith (*pro hac vice forthcoming*)
Clay W. Wright (*pro hac vice forthcoming*)
Terminus 200
3333 Piedmont Road NE
Suite 2500
Atlanta, GA 30305
rick.bold@gtlaw.com
victorj@gtlaw.com
smithaz@gtlaw.com
clay.wright@gtlaw.com

*Attorneys for Plaintiff Swedish Institute Inc.*

Dated: August 19, 2026

*/s/ Nicole Gueron*

CLARICK GUERON REISBAUM LLP
Nicole Gueron
Melissa C. Holsinger
41 Madison Ave., 23rd Floor
New York, NY 10001
T: (212) 633-4310
ngueron@cgr-law.com
mholsinger@cgr-law.com
*Attorneys for Defendant Lincoln Educational Services Corp.*

Dated: August 19, 2026

IT IS SO ORDERED.

Dated: August 20, 2026

Sarah L. Cave, U.S.M.J.

# APPENDIX A

# FORENSIC SEARCH TERMS

**CATEGORY 1: ENTITY NAMES**

- "Swedish Institute!"
- "Swedish!"
- "Lottus!"
- "Atelier!"
- "swedishinstitute.edu"

**CATEGORY 2: EMAIL ACCOUNTS**

*Swedish Institute Email Domain:*

- @swedishinstitute.edu

*Lottus Email Domain:*

- @lottuseducation.com

*Lincoln Email Accounts:*

- druffin@lincolntech.edu
- ewilliamson@lincolntech.edu
- jsmith@lincolntech.edu
- ajones@lincolntech.edu
- derrick.ruffin@lincolntech.edu
- ebony.williamson@lincolntech.edu
- jennifer.smith@lincolntech.edu
- anthony.jones@lincolntech.edu

*Personal Email Accounts:*

- derrickruffin@yahoo.com
- Ruffin7585@gmail.com
- cbarinc@gmail.com
- JubilanceJones@Gmail.com
- smithjennifer8861@gmail.com
- ewilliamson123@yahoo.com

**CATEGORY 3: INDIVIDUAL NAMES**

*Former Swedish Institute Employees Who Went to Lincoln:*

- "Derrick" W/3 "Ruffin"
- "Ebony" W/3 "Williamson"
- "Jennifer" W/3 "Smith"
- "Anthony" W/3 "Jones"

*Employees Whose Data Appears in Stolen Files:*

- "Spanny" W/3 "Jack"
- "Lucy" W/3 "Luo"
- "Lucy" W/3 "Summer"
- "Nikki" W/3 "Stewart"
- "Jennifer" W/3 "Taylor"
- "Julio" W/3 "Hernandez"
- "Maria" W/3 "Romero"

- “Linda” W/3 “Conte”
- “Lucila” W/3 “Nieto”
- “Michele” W/3 “Partovi”
- “Keith” W/3 “Jones”
- "Kia” W/3 “Jones”
- “Qiana”

**CATEGORY 4: MARKETING STRATEGIES AND MATERIALS**

- “Marketing BIBLE”
- “Start and Marketing Plan”
- “SI Marketing Mid Year Review”
- “Massage Recirc Campaign”
- “Quarter Text Blast”
- “Medical Text Blast”
- “Massage Text Blast”
- “TextAim List”
- “Email Blast”
- “Email Campaigns”
- “Summer Quarter 2021 Email Blast”
- “April Email Campaigns”

**CATEGORY 5: STUDENT LEAD AND ENROLLMENT DATA**

- “Nursing Leads with Emails”
- “Nursing students new lead”
- “Unconverted ST-MA-MBC Leads”
- “All other leads”
- “reports_admissions_leads”
- “Enrolled List of Students”
- “Quarter and Semester Enrolled List”
- “Enrolled students for Quarter and Semester”
- “Student Sample”
- “Spring 2021 Quarter Enrolled”
- “Scrub”

**CATEGORY 6: ADMISSIONS STARTS AND PERFORMANCE DATA**

- “admissions_starts”
- “new_admissions_starts”
- “STARTS AND DROPS AND STUDENT TOTALS”
- “New Start plans”
- “Preliminary 26 Swedish new starts”
- “Start and Show Rate”
- “2019 Starts By Program”
- “Rpt01-004 Unique New Class Starts”
- “Pending Grads”
- “Atelier_10_Oct 2025 Starts”
- “Atelier 2026 Start Update”

- “Drop Report”

**CATEGORY 7: ADMISSIONS REPRESENTATIVE GOALS AND TARGETS**
- “Start Goals and Targets”
- “Rep Goals”
- “Reps Goals and Targets”

**CATEGORY 8: STUDENT FINANCIAL DATA**
- “StudentBalances”
- “Student Balance Report”
- “Transaction_Report”
- “Net Price Calculator”
- “IonTuition”
- “School Pricing Form”
- “Run Rate by Program”

**CATEGORY 9: STAFF PERFORMANCE AND COMPENSATION**
- “Staff Performance Appraisal”
- “Administrative Staff Performance Review”
- “Job Duties”

**CATEGORY 10: ADMISSIONS POLICIES AND OPERATIONAL DOCUMENTS**
- “Admissions Operational Policies”
- “Admissions Policies and Practices”
- “Admissions Guide”
- “Wonderlic Entrance Assessment”
- “Addendum to Nursing Entrance Requirements”
- “Recruitment Advertising and Disclosures”
- “CSPT Enrollment Agreement”
- “Admissions Criteria”
- “Overcoming 1st objections”
- “Operational Bullet Points”
- “COD procedure”
- “FAFSA to do’s”
- “Swedish Faculty Handbook”

**CATEGORY 11: JOB DESCRIPTIONS**
- “Director of Admissions-Job Description”
- “Admissions Representative-Job Description”
- “SI VP of Enrollment Operations”
- “Vice President of Admissions”
- “Vice President of Enrollment”
- “SI COO”

**CATEGORY 12: BUDGET AND FINANCIAL PLANNING**
- “Swedish - Report Template”

- “Swedish - Report 2026”
- “Atelier Budget”
- “2017-18-19 Start and Show Rate”
- “Statement of Work”
- “All Rooms utilization”
- “Report Formats”