**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SWEDISH INSTITUTE INCORPORATED,<br>Plaintiff,<br><br>v.<br><br>LINCOLN EDUCATIONAL SERVICES CORPORATION and DERRICK RUFFIN,<br><br>Defendants. | CASE NO. 1:26-cv-05955 |

**~~[PROPOSED]~~ ORDER TO PERFORM FORENSIC INSPECTION AND PROTOCOL AGREEMENT**

Pursuant to the Consent Order, (Dkt. 41), Plaintiff Swedish Institute Incorporated ("Plaintiff" or "Swedish Institute") and Defendant Derrick Ruffin ("Mr. Ruffin") (collectively, the "Parties") agree to enter into this Protocol covering the forensic inspection, imaging, and searching of the Devices (as defined below) provided to the Forensic Examiner pursuant to the Consent Order.

**Preliminary Definitions**

"Devices" means all electronic devices, electronic data storage devices capable of storing, transferring, or transmitting digital information, email accounts (including derrickruffin@yahoo.com and ruffin7585@gmail.com), cloud storage accounts, messaging accounts, cell phone accounts, external storage devices and any other data sources used by Mr. Ruffin from December 18, 2025 to present, including the following external storage device identified as having been connected to Mr. Ruffin's Swedish Institute-issued computer: a Western Digital "easystore" external hard drive, serial number 5758413145363639504D534C and volume serial number 14280CA9, together with any additional external storage devices subsequently identified by any Party or by the Forensic Examiner.[1]

"Swedish Institute Documents or Information" means any information or material originating from or relating to Swedish Institute, in any form, whether or not marked confidential, and whether stored on personal devices, personal email accounts, cloud storage, or any other medium.

[1] To the extent Mr. Ruffin has actual knowledge of devices, accounts, or data sources containing Swedish Institute Documents or Information that predate December 18, 2025, such devices, accounts, and data sources are also included within the scope of this Protocol.

WHEREAS the Court now orders the following parameters of the forensic review and analysis of the Devices, each of which is set forth in detail in the paragraphs following the Whereas clauses:

1) Maragell - https://maragell.com/ - a third-party forensic examiner ("Forensic Examiner") is chosen by Plaintiff. Ruffin agrees to Plaintiff using Maragell as a third-party forensic examiner.

2) The Parties shall evenly split the costs and fees charged by the Forensic Examiner.

3) There will be no ex parte communications with the Forensic Examiner.

4) The Forensic Examiner will run searches on the Devices.

5) A hit report will be provided to all Parties based on search terms selected at Plaintiff's discretion. The Hit Report (as defined below) will be marked HIGHLY CONFIDENTIAL INFORMATION pursuant to a negotiated protective order to be submitted to the Court (the "Protective Order").

6) Mr. Ruffin will have an opportunity to review the documents identified by the Hit Report and make appropriate objections to a hit based solely on the following reasons: 1) privilege; 2) personal in nature (provided no Swedish Institute Documents or Information is contained within the personal document). Mr. Ruffin will also have an opportunity to mark hits as CONFIDENTIAL, HIGHLY CONFIDENTIAL (which includes proprietary and/or trade secret information), or other designations permitted under the protective order.

7) The Forensic Examiner will also have the ability to search for suspicious activity, such as deleted items, USB devices connected to a device or anything else that they deem will be worthy of the report.

WHEREAS, pursuant to the Consent Order, (Dkt. 41), Mr. Ruffin shall provide access for forensic inspection and imaging, and provide access sufficient for forensic inspection, the Devices no later than September 4, 2026;

WHEREAS, on or before September 2, 2026, Plaintiff will provide the Search Terms/Search List to Mr. Ruffin;

WHEREAS, in addition to the terms above which were ordered by the Court, the Court also orders the following:

**<u>Identification of Devices</u>**

1. In the event that additional Devices are identified by any Party or by the Examiner, the Parties shall continue to make available to the Examiner the Devices, as provided in the Consent Order. Within three (3) business days of the date of this Order, Mr. Ruffin shall provide to Plaintiff's counsel and the Forensic Examiner a written certification, signed under penalty of perjury, identifying any and all devices, accounts, and storage locations known to him - whether

physical, virtual, personal, or work related – that were used at any time during the applicable time periods set forth in the Definitions above to access, store, transmit, receive, create, view or delete any data, communications, or documents containing any of Plaintiff's confidential or proprietary information or on which Mr. Ruffin communicated with any current or former Swedish Institute employee or stored, transmitted, or accessed any Swedish Institute Documents or Information. This identification shall include, but not be limited to, all desktop computers, laptop computers, tablets, mobile phones, external hard drives, USB flash drives, cloud storage accounts, email accounts, social media accounts, messaging application accounts, network-attached storage devices, third-party devices, and any other storage media or communication platforms, regardless of whether such devices or accounts are already identified in the definition of "Devices" set forth above. Mr. Ruffin's certification shall specifically identify any device or account not previously disclosed to Plaintiff or the Court, and shall confirm whether any such device or account has been lost, destroyed, wiped, transferred, or is otherwise no longer in Mr. Ruffin's possession, custody, or control, providing all known details regarding circumstances of such loss, destruction, transfer, or unavailability. To the extent Mr. Ruffin becomes aware of any additional device or account following submission of the initial certification, Mr. Ruffin shall promptly supplement the certification without delay. From the date of this Order and continuing through the duration of this litigation, Mr. Ruffin is hereby prohibited from deleting, destroying, altering, concealing, transferring, or otherwise spoliating any data, documents, devices, or accounts that are subject to this Protocol or that may contain information relevant to this litigation. This prohibition applies to all Devices as defined herein, as well as any other device or account in Mr. Ruffin's possession, custody, or control that may contain relevant information. The Court will determine whether any violation of this preservation obligation may result in sanctions, adverse inference instructions, or such other relief as the Court deems appropriate, including but not limited to a finding of contempt.

**Preparation for Inspection**

2. Prior to imaging any Devices, Forensic Examiner will follow industry standards to properly intake evidence to include, as applicable, recording the evidence make, model, serial number, volume serial numbers, and shall be allowed to take appropriate digital photographs to document their current physical condition and operability. Prior to imaging devices, Forensic Examiner shall properly prepare suitable forensic storage media, including but not limited to an E01/AFF4 Forensic Image File ("Forensic Image File") for receipt of any forensic images created through Forensic Examiner's execution of any directives under this protocol. As part of the Forensic Image File, the Forensic Examiner shall also utilize all other appropriate storage media necessary to appropriately store the applicable data, such as Cellebrite UFDR, native email collection such as Mbox or .pst, etc. Forensic Examiner shall provide the parties with a chain of custody form listing the evidence received, as described within this paragraph.

**Imaging of Device(s)**

3. Forensic Examiner shall prepare the Forensic Image File. Forensic Examiner shall document and record on an acquisition form: (i) a general description of the process and tools utilized to conduct the imaging; (ii) the MD5 hash value of the original source Device; and (iii) the MD5 hash value of the copy.

4. If any Devices are computers, Forensic Examiner shall also obtain complementary metal oxide semiconductor (CMOS) date and time data within the computer basic input/output system (BIOS). The BIOS date and time should be compared with the actual date and time, and the two shall be recorded.

If any Devices are virtual repositories, Forensic Examiner shall document any and all information necessary to identify the original source of the virtual repositories on the chain of custody form. In addition to the actual data from virtual repositories, Forensic Examiner shall collect independent auditing activity, or logging. Such examples may include Microsoft 365 Enterprise, Google Workspace, Dropbox (commercial or free, but auditing may vary), OneDrive (free version), Google Drive (free version).

5. Forensic Examiner shall be entitled to make additional copies of any forensic image created under this Protocol for purposes of redundancy and disaster recovery.

**Preparation for Review and Search of Images**

6. Prior to the Forensic Examiner conducting any forensic analysis/examination (a "Review") of any forensic image created from a Device, Forensic Examiner shall ensure that all partitions are displayed/recovered and shall then execute general preparatory actions, including but not limited to: the recovery of deleted folders and files (including from volume shadow copies), OCRing images as applicable, indexing the data, and other actions the Forensic Examiner deems appropriate to assist in the execution of this protocol. Mr. Ruffin shall fully cooperate with the Forensic Examiner in the execution of this Protocol. Such cooperation shall include, but not be limited to, providing all necessary passwords, passcodes, biometric access, encryption keys, two-factor authentication access, and login credentials for all Devices and accounts subject to this Protocol upon reasonable request of the Forensic Examiner (e.g. within 2 business days). Mr. Ruffin shall promptly respond to any reasonable requests from the Forensic Examiner for assistance in accessing or imaging any Device or account. The Court will determine whether any failure to cooperate fully and timely with the Forensic Examiner may be deemed a violation of this Order and may result in sanctions, adverse inference instructions, or such other relief as the Court deems appropriate.

**Search for Plaintiff's Data and for Data Search Terms and Reporting Requirements**

7. Forensic Examiner shall conduct a search across all Documents, including, but not limited to files and emails on the Devices that are hits to "Plaintiff's Data Search Terms," which may include search terms, MD5 hash values, and/or file names. Plaintiff, through its counsel, will provide Plaintiff's Data Search Terms to the Forensic Examiner before he or she conducts the search.

The Forensic Examiner will only release "hits" to Plaintiff's counsel after Mr. Ruffin has had an opportunity to review the Hit Report and make objections as discussed throughout this Protocol. After running Plaintiff's Data Search Terms, the Forensic Examiner shall provide a Hit Report that contains an identification of how many "hits" arise from each of the individual Search Terms with respect to each Device. Thereafter, the Parties may negotiate ways in which to narrow certain Search Terms that produce an exceedingly large number of hits (e.g., through proximity

connectors or the addition of other keywords). In no event shall the negotiations exceed two business days. Once the negotiations (if any) conclude, the Forensic Examiner shall proceed with running Plaintiff's Data Search Terms, as modified by agreement of the Parties in the negotiations. The Parties agree to negotiate in good faith. Should the Parties be unable to resolve any disputes regarding Plaintiff's Data Search Terms, the Parties may follow the discovery dispute resolution process explained in this Court's Individual Practices in Civil Cases. If the Parties agree to modified searches, the Forensic Examiner shall run the modified searches. Search terms applicable to filenames are not subject to further narrowing.

Additional search terms, or iterations of search terms may be agreed upon by the Parties. For avoidance of doubt, all searches shall be run against not only all data content, but also against all available metadata fields.[2] For static or non-communication documents, including but not limited to word processing files, spreadsheets, presentations, PDFs, and other similar file types, the search shall be conducted without any date restriction and shall encompass all such documents found on the devices regardless of when they were created, modified, or accessed. For all communications, including but not limited to emails, text messages, instant messages, chat logs, and any other form of electronic communication, the search shall be limited to the period from December 18, 2025 through the present.

8. Following identification of hits responsive to searches executed under the Forensic Examiner's search for Documents and files under "Plaintiff's Data Search Terms" as described in Section 7 above, the Forensic Examiner shall record in a log (the "Hit Log"), an identification of any Documents, files and emails (and attachments) that were responsive either as data content, or within a metadata field, under each of the various searches. Such log will be provided to the Parties and shall be marked as HIGHLY CONFIDENTIAL INFORMATION pursuant to the Protective Order entered into between the Parties. The Hit Log shall contain an identification of how many "hits" arise from each of the individual Search Terms with respect to each Device.

9. The Forensic Examiner shall provide a report showing the following minimum information:

[2] The terms "**Document**" or "**Documents**" are used herein in the broadest sense and include, but are not limited to, all original and non-identical copies of the following: all agreements, communications, data, correspondence, telegrams, telegraphs, newspaper or journal articles, excerpts, telexes, text messages, Slack communications, memoranda, electronic mails, emails, electronic files or files, electronic records, books, summaries of records, notices, charts, graphs, maps, blueprints, diagrams, reports, notebooks, plans, surveys, plats, calculations, drawings, sketches, indices, pictures, audio or video tape recordings, accounts, calendars, telephone message logs, e-mail, computer generated messages or data (and all back-up files, tapes and stored memory), including those sent and received on LinkedIn, Facebook Messenger, and Salesforce.com, and any other social media site, schedules, spreadsheets, diaries, journals, opinions, appraisals, drafts, ledgers, receipts, check stubs, and any other paper or writing or document of any kind, character or description (or any summaries thereof), in any form, including paper or electronic.

a. A listing of the make/model/serial number of each and every Device which the Forensic Examiner examined/analyzed, and its storage media within.

b. A report referencing all removable storage Device(s) turned over for inspection, including:

1. Date and time the Device was formatted;

2. Hardware serial number;

3. Volume serial number;

4. Make/model/capacity of Device; and

5. Identifying information such as the presence of Mac trashes folder or Windows Recycle Bin.

c. A USB device history report, to include entries from Setupapi logs, registry entries for USBStor and DevClass, logs, Unified Logs, FS Events, Favorite Volumes, Com.apple.finder.plist files, or any other applicable location, for all devices inserted.

10. The Parties acknowledge that the Hit Log shall be supported by additional reports and analysis as described below.

11. As it relates to the items reflected in the Hit Log, the Forensic Examiner shall prepare a report reflecting a non-content full file listing of the contents of the Hit Log for each Device (including all active and deleted files), which includes, if natively available, File Name, Author, Last Saved Author, File Size, File Extension, Password Protection Status (yes or no), file metadata including the dates and times for File Created, Last Written, Last Saved, Date Added, Last Accessed, Last/Entry Modified Date, Last Printed Date, File Description (archive, file, folder, overwritten, deleted, etc.) Last Accessed, Password Protection Status (yes or no), MD5 Hash, and Full Path values.

12. In addition to the searching above, the Forensic Examiner shall perform additional review to support the creation of various forensic reports. These reports are exclusive from, and in addition to the searches described above.

13. As it relates to the items in the Hit Log, the Forensic Examiner shall create a report listing any and all Desktop/Laptop/Server/NAS/SAN/USB, or any other storage locations and accounts used by Mr. Ruffin. This report(s) shall include a sequential reference/record number so that parties can refer to a given line item when communicating, and at a minimum:

a. Full list of file/folder opening artifacts (e.g., lnk, jmp, office mru, recent docs, open save mru, shellbag, etc) created or last written that point to files located on the Device hard drive, or any other location the file opening artifact references (e.g. removable device, network, etc.);

b. Internet history report for files accessed as well as files being downloaded/uploaded via cloud storage locations including but not limited to Box, Dropbox, YouSendIt, SugarSync, Google Drive, OneDrive, iCloud, etc.;

c. A listing of all files transmitted and/or printed from Mr. Ruffin's Devices, including, where available, File Name, Author, File Extension, File Creation / Last Modified / Last Accessed, MD5 hash and Full Path values.

14. To the extent not already reflected in the Hit Log, the Forensic Examiner shall create a report which fully lists all emails sent or received that are returned as hits in the Hit Log. This report shall list, for each email, the date, time, From, To, CC, BCC, Subject, and Filename(s) of all attachments (to the extent not already included in the Hit Log).

15. As it relates to the items in the Hit Log, the Forensic Examiner shall consider transaction logs and other system files that may contain information to support the reporting requirements above, or in support of other tasks throughout the protocol (e.g., USNJ, VSCs, PLISTs, etc).

16. As to all hits on the Hit Log from smart phones and smart tablets, a Cellebrite or equivalent report of all messages sent or received through any app on such Device (including social media apps, LinkedIn, WhatsApp, etc.), or hits on the Hit Log regarding call logs, voicemail, or contacts, the Forensic Examiner shall provide a report showing:

a. As to all smart phones and smart tablets within the Devices, a call log listing all incoming and outgoing calls from December 18, 2025 to the present. Each call log shall include the name of the person on the other line (if known based on existing contacts), phone number, date of the call, time of the call (in UTC), duration of the call, and whether it was incoming or outgoing.

b. As to all smart phones and smart tablets within the Devices, a listing of all voicemails received and saved on the Device from December 18, 2025 to the present. Each voicemail listing shall include the name of the caller who left the voicemail (if known), phone number of the caller who left the voicemail, date the voicemail was received, time the voicemail was received, and duration of the voicemail.

c. As to all smart phones and smart tablets, a listing of all Contacts saved on the phone, including name, company name, all phone numbers, email addresses, physical addresses, and any other notes retained about the individual, as well as metadata associated with each contact, including the date the contact was created on or added to the phone.

17. Forensic Examiner shall conduct additional analysis for information relevant to the identification, use, disclosure, transfer, access, deletion, or destruction of potentially relevant data as may be directed by the Parties or the Court.

18. Forensic Examiner shall provide copies of the reports described in this section to the Parties. The reports shall be treated as Confidential under the Protective Order unless the

Parties agree otherwise. The reports may be shared by the Parties, including as to Plaintiff, to the appropriate management representatives of Swedish Institute who have need to access this information for purposes of prosecution of this case.

**Access to Files**

19. The Forensic Examiner shall provide access to the data responsive to Plaintiff's Data Search Terms as follows. Mr. Ruffin will have seven (7) business days after receipt of the Hit Log, and all other reports and data from the Forensic Examiner to review and specifically identify to Plaintiff any objections to the items contained in the Hit Log or the accompanying reports. Mr. Ruffin shall not designate as privileged any of Plaintiff's alleged property ("Plaintiff's Documents"), including its alleged Confidential Information or any evidence, including relevant metadata, of use, disclosure, access or destruction of Plaintiff's files or information.

Mr. Ruffin shall designate documents, information, Hit Log results, or reports as CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION within seven (7) business days of receipt of the Hit Log and/or report, however if the number of documents or Hit Log results is very numerous, Mr. Ruffin may request a reasonable extension of time from Plaintiff to complete its review for confidentiality designation, which request shall not be unreasonably refused.

Disputes concerning Mr. Ruffin, any Device, account, search term, or hit document shall not delay or otherwise affect the Forensic Examiner's obligation to produce, or Plaintiff's right to receive, any data, reports, or Hit Log results that are not the subject of a dispute. In the event a dispute arises with respect to Mr. Ruffin, a specific Device, account, search term, or document, the Forensic Examiner shall proceed with all aspects of the examination and production not affected by the dispute, and shall make available to Plaintiff all undisputed results on the schedule set forth in this Protocol. Disputed items shall be segregated by the Forensic Examiner and withheld from production only to the extent necessary to isolate the specific subject matter of the dispute, and in no event shall a dispute as to Mr. Ruffin, a Device, account, search term, or document be construed to place a hold on results pertaining to any other Device, account, search term, or document. The Parties shall cooperate in good faith to enable the Forensic Examiner to make this determination promptly.

20. Plaintiff and those individuals who may have access to information designated as CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION (which includes proprietary and/or trade secret information), as applicable, pursuant to the Protective Order will have immediate access only to those files responsive to Data Search Terms that Mr. Ruffin does not object to within seven (7) business days after receipt of the Hit Log, and all other Forensic Examiner reports[3]. If Mr. Ruffin's seven (7) business day deadline to make objections has expired without objections being made, Forensic Examiner shall provide Plaintiff with access

[3] For any objections to the files or data, for which Mr. Ruffin has legitimate grounds to exclude from the production based on the text of this Order, Mr. Ruffin shall provide a log of files that are removed from the production / review and must include, to the extent available, the verbatim name of the file, verbatim subject of the email or document, date, each sender and recipient, and the reasons for the document being excluded from the production.

to all data responsive to Plaintiff's Data Search Terms that Mr. Ruffin has not identified as privileged or subject to another valid objection that would remove it from the production. Nothing in this Protocol shall be deemed to limit the proper scope of discovery or prevent a party from seeking relevant documents through proper discovery requests.

21. The Parties will meet and confer regarding the disposition of any files where there is a dispute concerning the proper owner or relevance, or the removal from production, as well as the disposition of Plaintiff's files or other documents belonging to Plaintiff in Mr. Ruffin's possession within three (3) business days after either party raises a dispute with the other party, unless the Parties mutually agree otherwise. To the extent the Parties are unable to resolve any dispute over Mr. Ruffin's objections or the ownership of any files or relevance, the Parties agree that the dispute may be resolved by the Court but the confidentiality of said files shall be maintained during the period of the Parties' dispute and subject to either Party's right to seek additional protections for the files.

**<u>Other Analysis</u>**

22. **Deleted File Analysis** – The Forensic Examiner is also authorized to analyze any documents that may have been or were deleted during the applicable time period from December 18, 2025 through the present as to the Devices (the "Relevant Time Period") to identify, to the extent possible, the date and time such Documents were deleted, the contents of the deleted Documents, and metadata identifying the date the Documents were created, last accessed, last modified, and any other attributes available regarding the Documents. If any such deletion activity is found to have occurred, the Forensic Examiner shall provide a summary of this activity in a written summary report (the "Report").

23. **Anti-Forensic Evaluation** – The Forensic Examiner shall conduct reasonable searches for and evaluate if any anti-forensics evidence elimination techniques were employed such as: (1) evidence of searches for deleting files or removing content, (2) evidence of search for or purchases of software to delete files or remove content, (3) evidence of running software designed to delete files or remove content, (4) evidence of clearing of browsing history, (5) evidence of running shell commands or scripts in Terminal or equivalent application, which would include the listing of these commands, (6) evidence of items in Trash /Recycle Bin or clearing of Trash/Recycle Bin, (7) evidence of changing retention settings on mobile devices, and (8) any other analysis the Forensic Examiner deems necessary or appropriate through its expertise; after reviewing this information, the Forensic Examiner will report to the Parties, in writing, whether any anti-forensics evidence elimination techniques were employed, and if so, details must be provided in the Report. The report shall also include, to the extent detected from the evaluation above, information related to the download, purchase, installation, execution, usage, or removal of any data wiping, obfuscation, anti-forensics or time stomping, including specific information on the source, usage, and extent of any files permanently unavailable/irrecoverable following the use of any wiping or remediation software.

24. **External Storage Device History Reconstruction** – The Forensic Examiner shall reconstruct and describe in the Report any external storage device use by creating an inventory of all USB flash drives and external hard drives that were attached to the Electronic Devices during the Relevant Time Period, along with the dates such devices were attached, associated time stamps,

their serial numbers, and whether there is any evidence of the transfer of Documents to or from the external storage device.

25. **Review of Photographs and Images** – The Examiner shall OCR photographs and images found on the devices to allow for searching before running search terms and preparing the Hit Log so those can be included in the search.

**Return of Original Device(s)**

26. Upon completion of the Imaging, Forensic Examiner shall return the Devices, but the Devices shall be subject to remediation, if applicable, as agreed upon by the Parties. Logistics for how to remediate the Devices shall be agreed upon by the Parties once the review has been completed. On a case-by-case basis, the Parties may agree that the device(s) may be held by the Forensic Examiner until remediation takes place. For Mr. Ruffin's personal cell phone, the forensic examiner shall return the device within no more than [TIME PERIOD TO BE FINALIZED BY THE PARTIES; NOT IN DISPUTE] hours of receiving it for imaging.

**Cost of Non-Compliance**

27. In the event either Party fails to timely comply with any obligation under this Protocol, the other Party may make application to the Court according to the ordinary procedures for contempt, sanctions, or fee shifting applicable to other discovery disputes.

**Remediation**

28. The Parties shall meet and confer concerning the extraction and removal of Plaintiff's files from the Devices after the reports are received and any disputes are promptly resolved. The Parties will identify the data to be deleted and the Forensic Examiner will permanently delete from the Devices all Plaintiff's alleged property that is found on the Devices, including its alleged Confidential Information, subject to the Parties' mutual agreement regarding scope and timing. Logistics for how to remediate the Devices shall be agreed upon by the Parties once the review has been completed. Mr. Ruffin shall schedule an appointment to appear at the Forensic Examiner's office in Cherry Hill, New Jersey, at which time the Forensic Examiner will complete the imaging of the iPhone the same day. The Forensic Examiner shall retain a forensic image of all the Devices for preservation purposes for the duration of this litigation.

**Right to Supplement**

29. Based on the results of this executed Protocol, and any new additional information obtained during the execution of this Protocol, the Plaintiff reserves the right to request additional analysis on the devices covered within this Protocol, and the Parties shall meet and confer regarding any such requests.

**Final Report of Forensic Examiner**

30. No later than fourteen (14) calendar days after the Forensic Examiner has completed all imaging of the Devices and received all credentials and cooperation required under this Protocol, and any and all disputes concerning the Search Terms, Hit Log, or matters identified

herein are resolved (the "Report Deadline"), the Forensic Examiner shall prepare and deliver to counsel for all Parties a comprehensive written Final Report (the "Final Report"). The Final Report shall be designated HIGHLY CONFIDENTIAL INFORMATION pursuant to the Protective Order entered in this action and shall include, at a minimum, the following:

a. Executive Summary. A plain-language executive summary describing the scope of the examination, the Devices examined, the methodology employed, and the overall findings, including whether evidence of the acquisition, possession, use, transfer, or deletion of Plaintiff's alleged Confidential Information or trade secrets was identified on any Device;

b. Device Inventory. A complete inventory of every Device examined, including make, model, serial number, volume serial number, storage capacity, operating system and version, the date and time the Device was imaged, and the MD5 and/or SHA-256 hash values of both the source Device and the forensic image, together with a description of the physical and operational condition of each Device at the time of imaging;

c. Chain of Custody Documentation. A complete chain of custody log for all Devices and forensic images created pursuant to this Protocol, from the time of initial receipt through the date of the Final Report;

d. Hit Log and Supporting File Listing. The complete Hit Log as described in this Protocol, together with a full file listing of all active, deleted, and fragmented files identified as responsive to Plaintiff's Data Search Terms, including all metadata fields identified in this Protocol (file name, author, file size, created date, last modified date, last accessed date, last written date, full path, MD5 hash, password protection status, and file description);

e. Deleted File Analysis. A detailed summary of all deleted files identified during the examination, including, to the extent recoverable, the file name, file type, file path, date of creation, date of last modification, date of deletion, and contents or description of each deleted file, with particular attention to any files deleted during the Relevant Time Period that appear to correspond to Plaintiff's alleged Confidential Information or that hit on Plaintiff's Data Search Terms;

f. Anti-Forensic Activity. A detailed description of any evidence that anti-forensic techniques were employed on any Device, including but not limited to evidence of data wiping software, file deletion utilities, clearing of browser history or recycle bin contents, use of shell commands or scripts, modification of file timestamps (time-stomping), changes to device retention settings, and the download, installation, execution, or removal of any obfuscation or evidence-elimination software. The Final Report shall specify, for each such finding, the tool or technique identified, the date(s) and time(s) of use, and the extent to which data was rendered permanently unavailable or irrecoverable as a result;

g. External and Removable Storage Device History. A complete inventory of all USB flash drives, external hard drives, and other removable storage media connected to any Device during the Relevant Time Period, including device make, model, hardware serial number, volume serial number, capacity, dates and times of connection, and a description of any evidence of file transfers to or from such devices, including identification of any files transferred that hit on Plaintiff's Data Search Terms;

h. Cloud Storage and Virtual Repository Activity. A summary of all evidence of access to, upload of, or download from any cloud storage service (including but not limited to Box, Dropbox, Google Drive, OneDrive, iCloud, and any other cloud-based file hosting or synchronization service) during the Relevant Time Period, including the name of the service, dates and times of access, and identification of any files transferred that correspond to Plaintiff's alleged Confidential Information or that hit on Plaintiff's Data Search Terms;

i. Email, Messaging, and Communication Analysis. A summary of all email, text message, instant message, social media message, and other communications recovered from the Devices that hit on Plaintiff's Data Search Terms or that involve communications with any current or former Swedish Institute employee, client, or expert identified by Plaintiff, including the date, time, sender, recipient(s), subject, and a description of any attachments;

j. Printing Activity. A listing of all documents printed from any Device during the Relevant Time Period, including, where available, file name, author, file path, date and time of printing, and printer identification;

k. Internet and Browser History. A summary of internet and browser history relevant to the access, download, upload, or transmission of Plaintiff's alleged Confidential Information, including access to webmail, cloud storage, or file-sharing platforms during the Relevant Time Period;

l. Mobile Device Analysis. With respect to any smartphone or tablet examined, a complete Cellebrite or equivalent report including call logs, voicemail listings, contact lists, and all messages sent or received through any application on such device (including social media apps, LinkedIn, WhatsApp, Slack, and any other messaging platform) during the Relevant Time Period that hit on Plaintiff's Data Search Terms;

m. Search Term Hit Summary. A summary identifying each of Plaintiff's Data Search Terms, the number of responsive hits generated by each term across all Devices and data sources, and the Devices or accounts on which responsive hits were found; and

n. Forensic Examiner's Conclusions. The Forensic Examiner's professional conclusions regarding the overall findings of the examination, including any observations regarding the integrity of the data examined, any limitations on the

examination resulting from damaged media, encrypted or password-protected data, or incomplete cooperation, and any recommendations for further forensic analysis.

The Final Report shall be delivered simultaneously to all Parties by secure electronic transmission. If the Forensic Examiner determines that the Report Deadline cannot be met due to circumstances beyond the Forensic Examiner's reasonable control, the Forensic Examiner shall provide written notice to all Parties no later than five (5) calendar days before the Report Deadline, identifying the reason for the delay and proposing a revised delivery.

**Protocol Period**

31. This Protocol shall be effective beginning on the date it is ordered by the Court and will continue until the remediation in Section 28 is completed (the "Protocol Period").

IT IS SO ORDERED.

Dated: August 31, 2026

Sarah L. Cave, U.S.M.J.

| **Stipulated and Agreed to by:** | |
|---|---|
| */s/ Fredric J. Bold*<br>Jason D. Burns<br>Greenberg Traurig LLP<br>One Vanderbilt Ave.<br>New York, NY 10017<br>Telephone: (212) 801-9200<br>*jason.burns@gtlaw.com*<br><br>Fredric J. Bold, Jr. (*admitted phv*)<br>Justin K. Victor (*admitted phv*)<br>Andrew Z. Smith (*admitted phv*)<br>Clay W. Wright (*admitted phv*)<br>Terminus 200<br>3333 Piedmont Road NE<br>Suite 2500<br>Atlanta, GA 30305<br>Telephone: 678.553.2254<br>*rick.bold@gtlaw.com*<br>*victorj@gtlaw.com*<br>*smithaz@gtlaw.com* | */s/ Justin M. Reilly*<br>Justin M. Reilly<br>NHG Law Group<br>4242 Merrick Road<br>Massapequa, N.Y. 11758<br>Telephone: (516) 228-5100<br>*justin@nhglaw.com*<br><br>*Counsel For Defendant*<br>*Derrick Ruffin* |

| | |
|---|---|
| *clay.wright@gtlaw.com*<br><br>*Attorneys for Plaintiff*<br>*Swedish Institute Incorporated* | |

# APPENDIX A

# FORENSIC SEARCH TERMS

**CATEGORY 1: ENTITY NAMES**

- "Swedish Institute!"
- "Swedish!"
- "Lottus!"
- "Atelier!"
- "swedishinstitute.edu"

**CATEGORY 2: EMAIL ACCOUNTS**

*Swedish Institute Email Domain:*

- @swedishinstitute.edu

*Lottus Email Domain:*

- @lottuseducation.com

*Lincoln Email Accounts:*

- druffin@lincolntech.edu
- ewilliamson@lincolntech.edu
- jsmith@lincolntech.edu
- ajones@lincolntech.edu
- derrick.ruffin@lincolntech.edu
- ebony.williamson@lincolntech.edu
- jennifer.smith@lincolntech.edu
- anthony.jones@lincolntech.edu
- MRusso@lincolntech.edu

*Personal Email Accounts:*

- derrickruffin@yahoo.com
- Ruffin7585@gmail.com
- cbarinc@gmail.com
- JubilanceJones@Gmail.com
- smithjennifer8861@gmail.com
- ewilliamson123@yahoo.com

**CATEGORY 3: INDIVIDUAL NAMES**

*Former Swedish Institute Employees Who Went to Lincoln:*

- "Derrick" W/3 "Ruffin"
- "Ebony" W/3 "Williamson"
- "Jennifer" W/3 "Smith"
- "Anthony" W/3 "Jones"

*Employees Whose Data Appears in Stolen Files:*

- "Spanny" W/3 "Jack"
- "Lucy" W/3 "Luo"
- "Lucy" W/3 "Summer"
- "Nikki" W/3 "Stewart"
- "Jennifer" W/3 "Taylor"
- "Julio" W/3 "Hernandez"

- “Maria” W/3 “Romero”
- “Linda” W/3 “Conte”
- “Lucila” W/3 “Nieto”
- “Michele” W/3 “Partovi”
- “Keith” W/3 “Jones”
- “Kia” W/3 “Jones”
- “Qiana”

**CATEGORY 4: MARKETING STRATEGIES AND MATERIALS**

- “Marketing BIBLE”
- “Start and Marketing Plan”
- “SI Marketing Mid Year Review”
- “Massage Recirc Campaign”
- “Quarter Text Blast”
- “Medical Text Blast”
- “Massage Text Blast”
- “TextAim List”
- “Email Blast”
- “Email Campaigns”
- “Summer Quarter 2021 Email Blast”
- “April Email Campaigns”

**CATEGORY 5: STUDENT LEAD AND ENROLLMENT DATA**

- “Nursing Leads with Emails”
- “Nursing students new lead”
- “Unconverted ST-MA-MBC Leads”
- “All other leads”
- “reports_admissions_leads”
- “Enrolled List of Students”
- “Quarter and Semester Enrolled List”
- “Enrolled students for Quarter and Semester”
- “Student Sample”
- “Spring 2021 Quarter Enrolled”
- “Scrub”

**CATEGORY 6: ADMISSIONS STARTS AND PERFORMANCE DATA**

- “admissions_starts”
- “new_admissions_starts”
- “STARTS AND DROPS AND STUDENT TOTALS”
- “New Start plans”
- “Preliminary 26 Swedish new starts”
- “Start and Show Rate”
- “2019 Starts By Program”
- “Rpt01-004 Unique New Class Starts”
- “Pending Grads”
- “Atelier_10_Oct 2025 Starts”

- "Atelier 2026 Start Update"
- "Drop Report"

**CATEGORY 7: ADMISSIONS REPRESENTATIVE GOALS AND TARGETS**

- "Start Goals and Targets"
- "Rep Goals"
- "Reps Goals and Targets"

**CATEGORY 8: STUDENT FINANCIAL DATA**

- "StudentBalances"
- "Student Balance Report"
- "Transaction_Report"
- "Net Price Calculator"
- "IonTuition"
- "School Pricing Form"
- "Run Rate by Program"

**CATEGORY 9: STAFF PERFORMANCE AND COMPENSATION**

- "Staff Performance Appraisal"
- "Administrative Staff Performance Review"
- "Job Duties"

**CATEGORY 10: ADMISSIONS POLICIES AND OPERATIONAL DOCUMENTS**

- "Admissions Operational Policies"
- "Admissions Policies and Practices"
- "Admissions Guide"
- "Wonderlic Entrance Assessment"
- "Addendum to Nursing Entrance Requirements"
- "Recruitment Advertising and Disclosures"
- "CSPT Enrollment Agreement"
- "Admissions Criteria"
- "Overcoming 1st objections"
- "Operational Bullet Points"
- "COD procedure"
- "FAFSA to do's"
- "Swedish Faculty Handbook"

**CATEGORY 11: JOB DESCRIPTIONS**

- "Director of Admissions-Job Description"
- "Admissions Representative-Job Description"
- "SI VP of Enrollment Operations"
- "Vice President of Admissions"
- "Vice President of Enrollment"
- "SI COO"

**CATEGORY 12: BUDGET AND FINANCIAL PLANNING**

- "Swedish - Report Template"
- "Swedish - Report 2026"
- "Atelier Budget"
- "2017-18-19 Start and Show Rate"
- "Statement of Work"
- "All Rooms utilization"
- "Report Formats"